IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

GULFSIDE CASINO PARTNERSHIP                                        PLAINTIFF

VS.                              NO. 4:24-CV-592-LPR

CHEROKEE NATION BUSINESSES, LLC;
CHEROKEE NATION ENTERTAINMENT, LLC;
POPE COUNTY JUDGE BEN CROSS IN HIS
OFFICIAL CAPACITY; THE POPE COUNTY
QUORUM COURT; JUSTICES OF THE PEACE
PHILLIP HANEY, MARGARET MOTLEY,
TIM WHITENBURG, RONNIE WILBANKS,
JACKIE HEFLIN, MARY METZ-BLAYLOCK,
BLAKE TARPLEY, AARON CAROTHERS,
BILL SPARKS, ALLAN GEORGE, LANE SCOTT,
JORDAN SOWERS, AND DAVID IVY, IN THEIR
OFFICIAL CAPACITIES AS MEMBERS OF THE
POPE COUNTY QUORUM COURT; THE ARKANSAS
RACING COMMISSION                                                 DEFENDANTS

## CHEROKEE NATION BUSINESSES, LLC AND CHEROKEE NATION ENTERTAINMENT, LLC'S REPLY IN SUPPORT OF CHEROKEE NATION BUSINESSES, LLC AND CHEROKEE NATION ENTERTAINMENT, LLC'S MOTION TO DISMISS

Cherokee Nation Businesses, LLC ("CNB") and Cherokee Nation Entertainment, LLC ("CNE"), by and through counsel McDaniel Wolff, PLLC, state as follows for their *Reply in Support of Cherokee Nation Businesses, LLC and Cherokee Nation Entertainment, LLC's Motion to Dismiss*:

## INTRODUCTION

In 2019, Pope County Judge Ben Cross was courted by a number of potential casino applicants. Among those candidates were CNB and Gulfside Casino Partnership ("Gulfside"). After reviewing the pool of candidates, Judge Cross chose to support CNB and negotiated an Economic Development Agreement ("EDA") with CNB. Now, nearly five years later (and two

1

years too late), Gulfside claims that Pope County and CNB entered a contract they should not have. Not only is that incorrect, but for the reasons articulated in CNB and CNE's Motion to Dismiss and accompanying brief, as well as the arguments outlined below, Gulfside is barred from the relief it seeks and this matter should be dismissed.

## ARGUMENT

I.     Untimely

Gulfside's claims fall drastically outside the scope of the five-year statute of limitations set forth in Ark. Code Ann. § 16-56-111(a).  The statute plainly applies only to "actions to *enforce* written obligations, duties, or rights…" Gulfside is not suing to enforce any obligations, duties, or rights under the contract and as a non-party without privity or any beneficiary interest in the contract it simply cannot.

To fall within the ambit of the five-year statute of limitations, Gulfside must show more than the existence of a written agreement. In fact, although a "plaintiff's right to recover may be evidenced in part by written instruments it does not necessarily follow that his cause of action is upon an instrument in writing." *Sommer v. Nakdimen*, 97 F.2d 715, 721 (8th Cir. 1938) (citing *Cotham v. Morris*, 115 Ark. 84, 171 S.W. 113). Gulfside's primary case, *McDougal*, is inapplicable. That case dealt with claims among parties to written leases about the interpretation and enforcement of their written leases. The specific question there was which written agreement applied, the mineral rights lessors' five or ten-year lease? Thus, the operative lease question fell under the five-year statute of limitations because the claim raised "contract-*enforcement* issues." *McDougal v. Sabine River Land Co.*, 461 S.W.3d 359 (Ark. App. 2015) (emphasis added).

Here, Gulfside is not attempting to enforce a written agreement to which it is a party. Ironically, its claim is that the actual parties to the agreement are abiding by the agreement, and

2

because the two sides are doing such a good job of abiding by the contract, it should be set aside. Gulfside's claim is that the county judge did something he should not have done. Moreover, unlike the lessor in *McDougal*, Gulfside is not privy to the contract. Thus, the three-year statute of limitations applies since this is an action challenging county actions and those which are "founded on any contract or liability, express or implied." Ark. Code Ann. § 16-56-105. Accordingly, Gulfside's claims are two years too late.

Gulfside asserts that the statute of limitations did not begin to run when the EDA was executed, but five years later, after the ARC awarded CNE the Pope County casino gaming license. This argument is fatally flawed. Gulfside's claim is that Pope County entered a contract it should not have. Its challenge is to the County's authority to act; not whether it is abiding by its contract. If it were the latter, Gulfside would not have standing to raise the claim because it is a legal stranger to the contract. But being the former, Arkansas law is clear that contracts which are deemed against public policy are void *ab initio*. *See Coddington v. Safeguard Ins. Co. of New York*, 237 Ark. 457, 464, 373 S.W.2d 413, 417 (1963) (holding that a compromise settlement agreement "was contrary to public policy and therefore void *ab initio*"). To suggest that the EDA itself is an illegal and void instrument but only became so when CNE was awarded a casino license is nonsensical. Gulfside's entire argument is that the EDA should never have been executed because the exclusivity provision improperly binds the County Judge to support CNB.[1] All the other declaratory relief sought flows from the execution of the EDA. So indeed, like any contract which is allegedly against public

---

[1]     As Pope County points out, the EDA contains a severability clause. If the exclusivity provision is unenforceable, it does not necessarily destroy the contract. But also, it does not mean that Pope County would be under any obligation to support Gulfside. In essence, Gulfside has brought a lawsuit in which a win provides it no benefit.

policy, the clock begins to run at the execution of the agreement. Even more so here, where the alleged harm (not being able to support Gulfside) began even before the contract was executed.

Gulfside risibly argues that "[t]he parties had no occasion to even raise whether the EDA was void for public policy purposes in the Cherokee Nation Businesses, LLC litigation." Gulfside Response to Motion to Dismiss, p. 6.  That is incorrect, to say the least.  Gulfside has filed several lawsuits over the Pope County casino license since August 2019 (the effective date of the EDA), including a complaint in Arkansas Court, Case No. 60CV-21-1653,[2] that made various claims and allegations and included a request for declaratory relief. Any one of those cases could have been a vehicle to challenge Pope County's authority to enter the EDA.  If the EDA is preventing Gulfside from obtaining the required support of Pope County, that bar arose long before now and well before that complaint was filed on March 9, 2021 (more than three years prior to the filing of this action). The bar arose when the EDA was signed (now over five years ago).  Gulfside concedes this in its Complaint, specifically stating that various entities including itself had sought the support of Pope County but were rejected "because of the CNB EDA's exclusivity requirement."[3] Complaint, ¶ 24.  Again, the exclusivity requirement has been in place since August 2019.

In a final effort to save its action, Gulfside maintains that even if the statute of limitations has expired regarding the claims against the EDA, its other claims save it.  There is no claim in the Complaint that is not dependent on the EDA being held void.  Thus, this argument carries no merit.

---

[2]        This case in particular is important as it gave rise to the Arkansas Supreme Court decision that determined nothing in the EDA prevented Gulfside from obtaining the requisite county support and allowed Gulfside another opportunity to obtain such support.

[3]        Here, Gulfside misrepresents the timeline. Pope County made its decision who to support for the license, then entered the EDA. Not the other way around as suggested by Gulfside.

II.     Judicial Estoppel

CNB and CNE well understand Gulfside's odd claims in this case. They are quite clear:

- "The CNB EDA *binds* County Judge Cross to issue a letter of support, and the Pope County Quorum Court to issue a resolution of support, for a Pope County casino gaming license exclusively to CNB or an entity designated by CNB in exchange for cash payments to the County, certain other local governmental entities, and various local entities." ECF No. 2 at 2, ₧ 2 (emphasis added).

- "The CNB EDA *eliminates* that competitive environment." ECF No. 2 at 7, ₧ 19 (emphasis added).

- "Despite Gulfside's proposal being superior in every aspect, *because of the CNB EDA's exclusivity requirement*, the Quorum Court and County Judge refused to issue a resolution of support or letter of support to Gulfside." ECF No. 2 at 9, ₧ 23 (emphasis added).

- "Based upon information and belief, other casino operators have approached the County Judge and members of the Quorum Court and were advised that no other letters of support or resolutions of support would be issued *because of the CNB EDA's exclusivity requirement*." ECF No. 2 at 9, ₧ 24 (emphasis added).

In comparison, Gulfside has claimed, and successfully maintained, the following arguments in previous litigation:

- "You asked about is Pope County stuck with Legends because of the EDA. That may be an inarticulate way of saying it, but was there an out, I think, was perhaps the Court's question. And the answer is *absolutely there's an out*…[.]" Oral Argument at 32:51, *Cherokee Nation Businesses, LLC v. Gulfside Casino P'ship*, 2023 Ark. 153, 676 S.W.3d 368 (2023), reh'g denied (Jan. 11, 2024), https://arkansas-sc.granicus.com/MediaPlayer.php?view_id=4&clip_id=1539 (last accessed July 22, 2024) (emphasis added).

- "But presumably if Pope County's given a letter to somebody else, they're going to negotiate what they believe is a better deal for Pope County. So, ultimately, *the ball is still in Pope County's court*." *Id*. (emphasis added)

- "If the Court finds that Legends was not qualified and that their license is void, the Racing Commission's going to have to open a new application period at which time the Pope County – County Judge and quorum court *will be free* to give a letter of support or resolution in support to whomever they choose." *Id*. (emphasis added).

The Arkansas Supreme Court accepted Gulfside's argument that the EDA was not exclusive and did nothing to bar it from seeking support from Pope County. Gulfside cannot now

assert that it and other entities have been rejected because of the exclusivity requirement. These are clearly inconsistent positions, and as a result, Gulfside's claims are barred, and this matter should be dismissed.

III.     Res Judicata

Gulfside claims, "[t]he parties had no occasion to even raise whether the EDA was void for public policy purposes in the Cherokee Nation Businesses, LLC litigation." ECF No. 21 at 6. That allegation is not true. Rather, it belies Gulfside's deliberate attempt to keep this claim as some final trump card. But the law does not allow such gamesmanship.

On August 15, 2019, Gulfside filed an administrative appeal after the ARC found it to be an unqualified applicant because the letter of support it included in its application was not issued by the then (and now) County Judge Ben Cross. *See Gulfside Casino Partnership v. Arkansas Department of Finance, et al.*, Circuit Court of Pulaski County, Arkansas, Case No. 60CV-19-5832. When Gulfside moved for summary judgment, the Department of Finance pointed out:

> It is also worth mentioning that Gulfside and Downstream (the Jefferson County applicant) initially obtained letters of support from the previous county administrators. (Appellant's MSJ Ex. 1, ¶¶ 5- 10) Gulfside's complaint and the court's record demonstrate that both Downstream (the Jefferson County applicant) and Cherokee Nation Business have been able to obtain letters of support from the current county officials holding office at the time of application. (Appellant's MSJ Ex. 1, ¶ 26) Gulfside concedes in its pleadings that it and Downstream initially obtained letters of support from county officials whose terms expired on December 31, 2018. (Appellant's MSJ Ex. 1, ¶¶ 5-10) However, Downstream subsequently obtained a letter of support from the current Jefferson County Judge, Gerald Robinson, and the current Pine Bluff Mayor, Shirley Washington. (Appellant's MSJ Ex. 1, ¶¶ 26).

*See* Appellees' Response in Opposition to Gulfside's Motion for Summary Judgment, *Gulfside Casino Partnership v. Arkansas Department of Finance, et al.*, Circuit Court of Pulaski County, Arkansas, Case No. 60CV-19-5832. If Gulfside felt that it could not obtain a current letter of support because of the EDA, it could have, and should have, raised the issue at that point.

6

On March 9, 2021, Gulfside filed a suit seeking to invalidate the Pope County casino license issued to Legends Resort & Casino, LLC.[4] *See Gulfside Casino Partnership v. Arkansas Racing Commission, et al.*, Circuit Court of Pulaski County, Arkansas, Case No. 60CV-21-1653. Gulfside's complaint in that matter also sought declaratory relief. In responding in opposition to a motion for summary judgment, Gulfside claimed:

> Gulfside considers itself harmed as a result of the Racing Commission's decision that Legends is a qualified applicant because but for that decision, there would be no qualified applicant for the Pope County casino gaming license and the Racing Commission would have to create a new application period. Gulfside would be able to seek local support and apply for the Pope County casino gaming license.

*See* Appellant's Response to Amended Motion to Dismiss of Separate Appellee, Legends Resort & Casino, LLC, *Gulfside Casino Partnership v. Arkansas Racing Commission, et al.*, Circuit Court of Pulaski County, Arkansas, Case No. 60CV-21-1653. This case provided yet another opportunity: if Gulfside felt it could not obtain a letter of support because of the EDA, it could have, and should have, raised the issue in that case.

Gulfside has demonstrated a pattern of having the opportunity to act, failing to do so, then suing later down the line. The law prohibits such serial litigation. As res judicata bars both the relitigation of claims which were actually litigated and those which could have been litigated, Gulfside's current litigation should be dismissed.

IV.     Issue Preclusion

Gulfside goes as far as to claim the EDA's exclusivity provision "eliminates [a] competitive environment." ECF No. 2 at 7, ¶ 19. However, the Arkansas Supreme Court (at

---

[4]     For technical reasons springing from the ARC's Casino Gaming Rules, CNB created an Arkansas entity to hold the casino license: Legends Resort & Casino, LLC ("Legends"). Somewhat predictably, Gulfside successfully sued to keep CNB from having an Arkansas entity hold the casino license on the claim that a newly formed entity, staffed by people with decades of casino gaming experience, could not demonstrate casino gaming experience.

Gulfside's insistence) has already ruled the opposite, holding that, despite the EDA, Gulfside or other applicants could obtain letters of support. *See Cherokee Nation Businesses, LLC v. Gulfside Casino P'ship*, 2023 Ark. 153, 676 S.W.3d 368 (2023), reh'g denied (Jan. 11, 2024). The Supreme Court was fully aware of the EDA and its terms. Competition cannot be limited if you are able to obtain what you seek. Issue preclusion applies to this case and bars the relief Gulfside now requests.

V.      Laches

Contrary to Gulfside's claims in its response, CNB and CNE have demonstrated they detrimentally relied on Gulfside's inaction in challenging the EDA until five years after it was executed. The detriments to CNE are almost too numerous to mention, including paying the $250,000.00 application fee; the numerous delays in applying for, let alone obtaining, a casino license; and having to defend against an action whose primary cited case authority is a ninety-eight-year-old, non-binding decision from a state in which no party in this case is a citizen.

VI.     Standing

Gulfside claims, "it sought a letter of support and a resolution of support for the Pope County casino license. It was denied both simply because Pope County chose to remain bound to an unlawful contract, the CNB EDA." County Judge Ben Cross held office for eight months before he issued a letter of support. Gulfside had every opportunity to attempt to secure his support in that time frame and did not do so.

Similarly, Gulfside had every opportunity to obtain a letter of support from the Mayor of Russellville. Gulfside's application identified its project as being in the city limits of Russellville. Per Amendment 100, it was required to submit a letter of support from the Mayor of Russellville as well. It did not do so, nor can it or has it claimed that the EDA with Pope County prevented it

from obtaining a letter of support from the Mayor. Gulfside utterly fails to address this deficiency in its response.

"Gulfside does not contest the denial of its application." ECF No. 21 at 9. That is, Gulfside accepts that it was an unqualified applicant because it did not have the letter or resolution of support from Pope County and that it did not have the required letter of support from the City of Russellville. This means even if Gulfside prevails, even if the EDA was declared void, even if CNE's letter of support and resolution of support are void, even if CNE's license was revoked, even if Gulfside could try for the umpteenth time to garner support from Pope County, and even if Gulfside managed to receive support from the county officials it has now accused of "us[ing] their power to…thwart" constitutional authorities, it still would not be a qualified applicant because it has not received a letter of support from the City of Russellville.

The Arkansas Supreme Court agreed with Gulfside's argument that the EDA did not stop it from receiving county support and gave Gulfside another opportunity to get it. Gulfside failed and wants another chance. But wanting a do-over does not create standing, nor can Gulfside maintain standing until the end of time because it is upset Pope County continues to turn it down.

Moreover, no relief requested here would deliver any governmental support to Gulfside. Its best-case scenario here is it invalidates the EDA. That result potentially harms the people of Pope County, but it does nothing for Gulfside. The Quorum Court and County Judge's discretion under Amendment 100 remains unaffected by anything in this litigation. So, whatever happens to the EDA, they would remain free to continue to reject Gulfside while supporting CNB and CNE. One wonders, after all of this litigation, if Gulfside succeeded in whisking away a more than $37 million EDA for Pope County, why would Pope County ever support Gulfside? By its own admission of deficiencies, Gulfside does not have standing to bring this litigation.

VII.    Failure to Exhaust

Gulfside takes the position that it is not seeking relief from the Arkansas Racing Commission. It does not contest the denial of its application, and even claims that the denial was proper. If Gulfside is not seeking relief from the ARC, then the ARC is not a real party of interest. Should Gulfside pivot and claim the ARC is a real party of interest, and is thus seeking relief from the ARC, it should have requested a hearing to challenge either the rules contemplated and adopted by the ARC or the licensing decision of the ARC. It made no such request, and as a result, failed to exhaust the administrative remedies afforded to it under the Casino Gaming Rules.

VIII.   Public Policy

Once again, Gulfside relies on an entirely distinct realm of insurance law to support its claims. The EDA does not violate public policy. Gulfside improperly relies on *Goodner* and *Long*, which were considered in accord with "settled Arkansas law" which holds that "an insurer may contract with its insured upon whatever terms the parties may agree, so long as those terms are not contrary to statute or public policy." *Shelter Mut. Ins. Co. v. Goodner*, 2015 Ark. 460, 5, 477 S.W.3d 512, 515 (2015).

In *Goodner*, the Supreme Court of Arkansas found that a provision in an insurance policy which provided for the depreciation of labor in calculating the actual cash value of a loss violated Arkansas law. *Shelter Mut. Ins. Co. v. Goodner*, 2015 Ark. 460, 6, 477 S.W.3d 512, 516 (2015) (citing *Adams v. Cameron Mut. Ins. Co.*, 2013 Ark. 475, 1, 430 S.W.3d 675, 676 (2013). In fact, the Court affirmed the lower court stating: "while the circuit court's ruling was based solely on public-policy grounds, it is axiomatic that this court can affirm a circuit court if the right result is reached, even if it is for a different reason." *Id*.

Similarly, *Long* held that a healthcare policy which excludes benefits for inpatient services when the patient terminates inpatient admission against medical advice is void as against public policy because it divests the insured benefits already accrued and such forfeitures "have not been favored by the courts in any case." *Arkansas Blue Cross & Blue Shield v. Long*, 303 Ark. 116, 118, 792 S.W.2d 602, 603 (1990) (citing 2 G. Couch, Couch on Insurance 2d, (Rev'd ed.) § 15:49 (1984)).

These cases have nothing to do with the authority of a county to contract with a private entity for the purposes of economic development. Gulfside uses a combination of ancient, non-controlling case law and the highly regulated and distinct area of insurance law to urge this Court to create public policy. The public policy of a state "is determined from its constitution and statutes" while the question of whether public policy was violated "is a question of law for the court." John Wesley Hall, 3 Trial Handbook for Arkansas Lawyers § 15:26 (2023-2024 ed.); *see also Shelter Mut. Ins. Co. v. Lovelace*, 2020 Ark. 93, 4, 594 S.W.3d 84, 86 (2020) (citing *Sterling Drug, Inc. v. Oxford*, 294 Ark. 239, 249, 743 S.W.2d 380, 385 (1988)). In this State, County Judges are empowered by the Arkansas Constitution and Arkansas statutes to enter into contracts such as the EDA on behalf of the county. Ark. Const. amend. 55, § 3; Ark. Code Ann. § 14-14-1102; *Haynes v. Faulkner Cnty.*, 326 Ark. 557, 563, 932 S.W.2d 328, 330 (1996) (stating that "a county may enter into enforceable contracts").

Amendment 100 and the Casino Gaming Rules call on the County Judge and Quorum Court to exercise their discretion as to how, when, and who to support for the casino license. They did just that *before* signing the EDA which confirmed Pope County's exclusive support for CNB and its affiliates. Gulfside now asks this Court to rewrite Amendment 100, the Casino Gaming Rules, and Arkansas public policy to strip the County Judge and Quorum Court of their discretion

and require that they issue letters and resolutions of support to anyone and everyone who requests one.

Finally, based on Gulfside's own arguments and interpretation of case law, there is no distinguishing factor between an EDA with an exclusivity clause and one without.  Gulfside admits to submitting its own proposed EDA to the Pope County Quorum Court in an effort to gain support, or, as Gulfside would put it, to improperly "influenc[e] the discretion vested in County Judge Cross and the Pope County Quorum Court . . .."  Complaint, ¶ 1.  It cannot have its cake and eat it too.

## CONCLUSION

Thus, on all fronts: this Court is without subject-matter jurisdiction, Gulfside lacks standing, the claims are estopped, precluded, and untimely, and the EDA is a valid contract that does not run afoul of public policy. Accordingly, CNB and CNE's Motion to Dismiss should be granted and this case dismissed, making it the coda on Gulfside's Arkansas litigation machinery. In the alternative, to the extent this Court relies upon allegations in CNB and CNE's Answer, CNB and CNE request judgment on the pleadings in their favor.

WHEREFORE, CNB and CNE pray that this Court grant its Motion to Dismiss, or alternatively grant judgment on the pleadings, for attorney's fees and costs, and for all other proper relief.

Dated: August 23, 2024

RESPECTFULLY SUBMITTED,

Bart W. Calhoun, Ark. Bar. No. 2011221
Scott P. Richardson, Ark Bar No 2001208
Brittany D. Webb, Ark Bar No 2023139
Lauren E. McCauley, Ark Bar No 2023140
**McDaniel Wolff, PLLC**
1307 West Fourth Street

Little Rock, AR  72201
Phone:  501.954.8000
Fax:     866.419.1601
bart@mcdanielwolff.com
scott@mcdanielwolff.com
bwebb@mcdanielwolff.com
lmccauley@mcdanielwolff.com

*Attorneys for Cherokee Nation Businesses, LLC and*
*Cherokee Nation Entertainment, LLC*